IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02322-REB-MEH

DEXTER HARRIS,

     Plaintiff,

v.

MARK ALLEN MATTHEWS, Denver Police Detective,

     Defendant.

---

## AMENDED[1] RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Before the Court is Defendant's Motion for Summary Judgment [filed May 27, 2011; docket #94].  Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter has been referred to this Court for recommendation.  The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication.  For the following reasons, the Court recommends that the Defendant's motion be **granted**.[2]

## STATEMENT OF MATERIAL FACTS

The following facts are taken from the Plaintiff's verified Amended Complaint, the

---

[1]The document is amended only to correct the docket number of the subject motion.

[2]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72(b).  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

unchallenged documents provided by the Plaintiff and the Plaintiff's deposition testimony.

1.      Plaintiff, Dexter Harris, was a prosecution witness in criminal cases brought against Robert Ray and Sir Mario Owens. [Plaintiff's Amended Complaint, p. 3, docket #7; Dexter Harris Deposition, May 21, 2010 ("Harris Depo."), p. 12, ll. 5-14, docket #37-1 at 3.]

2.      After meeting Ray in the Arapahoe County Detention Facility, Harris learned information that implicated both Ray and Owens in a double homicide.  Harris then reported this information to the District Attorney's office. [Harris Depo., p. 17, l. 15 – p. 18, l. 8; p. 21, ll. 1-6, docket # 37-1.]

3.      Harris was placed in protective custody after providing law enforcement with the information he had learned from Ray. [Harris Depo. at p. 50, ll. 5-16, docket #37-1.]

4.      Thereafter, Harris testified at motions hearings and a trial in 2005 or 2006 in Owens' criminal case.  Harris also testified at the trial of Ray in 2009. [Harris Depo., p. 25, ll. 8-19, docket #37-1.]

5.      Someone connected with Ray was present during Harris' testimony at Ray's trial. [Harris depo., p.121, ll. 6-13, docket #94-2 at 11].

6.      Ray and Owens knew that Harris testified against them. [Harris Depo., p. 127, ll. 12-25, docket #37-1 at 19.]

7.      On November 16, 2008, Harris was being held in the Denver City Jail on charges of "robbery" and "possession of a weapon by a previous defendant."  [Harris Depo., p. 38, l. 16 – p. 39. l. 16, docket #99 at 24.]

8.      Denver Police Detective Mark Matthews went to the Denver City Jail on November 16, 2008 to interview Harris on a matter unrelated to his arrest.  [Amended Complaint, p. 6, docket #7.]

9.      In the hallway on the way to the elevators, Detective Matthews released information concerning Harris' state witness status. [Id.]

10.     Sheriff's staff and "porters" – inmates responsible for cleaning the hallways – were present at the time. [Harris Depo., p. 46, ll. 13-24, docket #99 at 26.]

11.     On or about November 17, 2008, Harris reported the incident to the Arapahoe County District Attorney's Office.[3]  [Amended Complaint, p. 6, docket #7.]

12.     Harris did not receive any threats and was not assaulted by any other jail inmates while incarcerated in the Denver County Jail from November 19, 2008 to March or April 2009. [Harris Depo., p. 85, ll. 9-16, docket #94-2 at 3.]

13.     In or about March or April 2009, Harris learned from Shaun Brown that a "hit" had been put upon him.[4] [Harris Depo., p. 85, ll. 9-16.]

14.     A couple of days before August 24, 2009, Harris had a conversation with gang members affiliated with Ray and/or Owens regarding the "hit" Shaun Brown had told him about. [Harris Depo., p. 98, ll. 9-25, p. 99, ll. 1-25, docket #99 at 29.] Harris "blew [them] off." [*Id.*]

15.     On August 24, 2009, Harris was kicked down a flight of stairs. [Amended Complaint, p. 6, docket #7.]

16.     Someone placed their foot in the small of Harris' back and pushed him down the stairs.  Harris was able to grab onto the stair railing and tumbled a couple of times.  [Harris Depo., p. 93, ll. 6-19, docket #100-1 at 2; 96, ll. 10-24, docket #99 at 28.]

---

[3]A document submitted by Harris in support of this statement, an email message from an 18th Judicial District Investigator to the Chief Deputy District Attorney, is inadmissible as hearsay pursuant to Fed. R. Evid. 802.

[4]A document submitted by Harris with his original complaint (possibly in support of this statement), a letter from John Hower, Chief Deputy District Attorney, to Denver District Attorney Mitch Morrissey, is inadmissible as hearsay pursuant to Fed. R. Evid. 802.

17.     When Harris got to the bottom of the stairs, he looked up and there were people coming down toward him.  Harris does not know who kicked him and no one said anything to him either before or after he was kicked.  [Harris Depo., p. 96, l. 25, p. 97, ll. 1-18, docket #99 at 28.]

18.     Harris was treated for a cut on one of his elbows, and one of his knees sustained an injury as well.  None of the physical injuries were severe.  [Harris Depo., p. 112, ll. 14-25, docket #94-2 at 8.]

19.     Approximately a week or two, but no more than a month after the assault, Harris was placed on medication to deal with the "unrelenting fear" that he "suffers daily."  [Harris Depo., p. 116, ll. 15-25, p. 117, ll. 1-3, docket #99 at 30; Amended Complaint, p. 6, docket #7.]  He started out on one medication, but was switched to Remeron of which he takes approximately 45 milligrams. [Harris Depo., p. 115, ll. 22-25, p. 116, ll. 1-12, docket #99 at 30.]

## **DISCUSSION**

This matter is before the Court on remand from the Tenth Circuit Court of Appeals, which found that Harris has failed to demonstrate that his physical injuries were caused by Matthews' alleged release of Harris' confidential witness status, but concluded that the "district court did not address Harris' claim that he suffered mental and emotional damages as a result of Matthews' actions." *Harris v. Matthews*, No. 10-1405, 2011 WL 1108799, at *3 (10th Cir. Mar. 28, 2011) (unpublished).  Matthews timely filed the present motion seeking summary judgment on Harris' claims for declaratory relief, as well as for compensatory and punitive damages, arguing that Harris has failed to proffer evidence that Matthews disclosed the confidential information, that Harris is barred from seeking compensatory damages pursuant to 42 U.S.C. § 1997e(e), that Harris has not shown he suffers emotional harm, that Harris has failed to demonstrate a causal link between Matthews' alleged statement and Harris' emotional harm, and that Harris is not entitled to punitive

4

damages because he has not established a constitutional claim.  Harris timely responded to the

motion asserting that, because Matthews failed to defend against the claim for emotional damages,

he cannot do so now after appeal.  In the alternative, Harris names a number of witness who will

testify in his favor at trial and argues that a "setting-in-motion" theory of proximate causation

demonstrates that Matthews' action caused his emotional harm.  With respect to punitive damages,

Harris contends that Matthews' conduct poses a danger not only to himself, but "to all future

witnesses and to the public."  Response brief, docket #99 at 15.

## I.      Legal Standard

Summary judgment serves the purpose of testing whether a trial is required.  *Heideman v.*

*South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary

judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the

governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving

party bears the initial responsibility of providing to the Court the factual basis for its motion and

identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together

with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that

the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317,

323 (1986).  However, the non-moving party has the burden of showing that there are issues of

material fact to be determined.  *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party

may not rest on the allegations contained in his complaint, but must respond with specific facts

showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Hysten v. Burlington Northern &*

*Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II.     Treatment of a Pro Se Plaintiff's Action

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*. Accordingly, the court must "not supply additional facts, nor ... construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## III.    Analysis

Harris was a pretrial detainee at the time of the incident.  Amended Complaint at 6.  Harris'

remaining claim against Matthews is alleged as a violation of the Fourteenth Amendment (*id.* at 3),

but upon initial review, the court construed the claim as a violation of the Eighth Amendment.  *See*

Order, docket #9.  Construing his *pro se* pleadings liberally as I must, this Court considers Harris'

claim to be raised pursuant to the Due Process Clause of the Fourteenth Amendment, rather than to

the Eighth Amendment.  *See Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990)

(pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause rather than

under the Eighth Amendment's proscription against cruel and unusual punishment).  Under the due

process clause, detainees are entitled to the same degree of protection regarding prison conditions

as that afforded convicted inmates under the Eighth Amendment.  *Barrie v. Grand County, Utah,*

119 F.3d 862, 867 (10th Cir. 1997).  The same analysis applies to both types of claims. *Craig v.*

*Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).  However, liability is not based on negligence or even

gross negligence.  *Barrie*, 119 F.3d at 869.

Here, to determine whether Harris is entitled to a trial on his requests for declaratory relief,

damages for pain and suffering, and punitive damages, the Court must address whether Harris has

demonstrated any genuine issues of material fact concerning his claim that Matthews subjected him

to a serious risk of substantial harm in violation of the Fourteenth Amendment, as heretofore

analyzed under the Eighth Amendment.[5]  *Craig*, 164 F.3d at 495.

In order to have a cognizable Eighth Amendment claim against state officials, a Plaintiff

must allege facts demonstrating that: (1) the deprivation Plaintiff suffered is "sufficiently serious"

---

[5]The Court agrees with Matthews that Harris' arguments concerning Matthews' "failure to defend" are unpersuasive.  Matthews properly denied Harris' claim for emotional injury in his Answer filed February 12, 2010 [docket #19] and has timely filed his Rule 56 motion on the issue in accordance with Judge Blackburn's April 26, 2011 order.  *See* docket #91.

(objective standard), and (2) the official had a culpable state of mind (subjective standard). *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). A deprivation is sufficiently serious only if the deprivation "result[s] in the denial of the minimal civilized measure of life's necessities." *Id.* (citations and internal quotations omitted). Prison conditions may be "restrictive and even harsh" without meeting this factor. *Barney v. Pulshiper,* 143 F.3d 1299, 1311 (10th Cir. 1998). Moreover, being subjected to threats of abuse or the vague possibility of assault from other inmates is not sufficiently serious to give rise to an Eighth Amendment violation. *McBride v. Deer,* 240 F.3d 1287, 1291 n.3 (10th Cir. 2001).

However, prison officials must provide inmates with a minimum of safety. *Benefield v. McDowall,* 241 F.3d 1267, 1272 (10th Cir. 2001). "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer,* 511 U.S. at 833 (citation omitted, alteration in original). "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828 (internal quotations omitted). The Supreme Court has clarified the "deliberate indifference" standard, explicitly rejecting a purely objective test and holding that the Eighth Amendment deliberate indifference standard has a subjective component. *Id.* at 837. A prison official who "knows of and disregards an excessive risk to inmate health or safety" is deliberately indifferent for these purposes. *Id.*

Consequently, a prisoner states an Eighth Amendment violation by alleging that a prison official intended to cause him serious harm by inciting other inmates to do violence against him. *Northington v. Jackson,* 973 F.2d 1518, 1525 (10th Cir. 1992). While an 'idle threat' of impending physical harm that is not carried out will not suffice to state an Eighth Amendment claim, an imminent threat of serious harm, even though injury never actually occurs, will suffice. *See id.* at 1524; *see also Ramos v. Lamm,* 639 F.2d 559, 572 (10th Cir. 1980) (finding that an inmate need not

wait until he is actually assaulted before obtaining relief).  Thus, in order to establish a cognizable Eighth Amendment claim for incitement-to-violence, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm," the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component.  *Benefield*, 241 F.3d at 1271 (citing *Farmer,* 511 U.S. at 834).

Here, Matthews' arguments in support of his request for summary judgment address both the liability and damages portions of Harris' claims.  With respect to liability, Matthews argues that Harris has provided no viable evidence that Matthews labeled him a "snitch," and even if he did, there is no causal link between Matthews' disclosure and Harris' alleged emotional harm.[6] Regarding damages, Matthews argues that Harris is not entitled to compensatory damages pursuant to 42 U.S.C. § 1997e(e), that Harris has not demonstrated he suffers compensable emotional harm,[7] and that Harris may not receive punitive damages because he has not stated a viable claim.  The Court will address Matthews' liability arguments first.

A.      "Snitch" Label

Viewing the record in the light most favorable to Harris, the Court finds that despite Matthews' arguments to the contrary, Harris raises a genuine issue of fact as to whether Matthews

---

[6]Matthews' arguments go to the subjective component of an Eighth Amendment analysis only; thus, as Matthews has not challenged the objective component, the Court will assume, for purposes of this analysis only, that Harris has met his burden to show that he was incarcerated under conditions posing a substantial risk of serious harm.  In fact, it is undisputed that Harris was a witness in the criminal proceedings of two gang members ultimately convicted of murdering individuals who were expected to testify against them, and that other members of the gang were incarcerated in the same facility.  Consequently, it is not beyond cavil to assume for purposes of this analysis that Harris could be in fear for his safety if his confidential witness status were revealed to certain members of the prison community.

[7]Arguably, this argument may be considered a challenge to the objective component of an Eighth Amendment claim – i.e., whether the deprivation is "sufficiently serious" – but, because Harris' claim involves a specific Eighth Amendment prohibition of "incitement to violence," the Court believes it would be a stretch to analyze this particular argument under the objective prong.

released Harris' confidential witness status in the hallway at the Denver City Jail in the presence of other inmates. Harris asserts in his verified Amended Complaint that "... [Matthews] became irate and made threats on my life. When we were in the hallway on the way to the elevators, Detective Matthews released information concerning my state witness status to the inmates in an attempt to have me seriously injured or killed." Amended Complaint at 6, docket #7. In addition, Harris testified during his deposition that he, the sheriff's staff and two to three, but no more than six, "porters" – inmates who cleaned the hallways – were present when Matthews released the information. Deposition Transcript of Dexter Harris, May 21, 2010 ("Harris Depo."), p. 44, ll. 9-17; p. 45, ll. 18-25; p. 46, l. 1. Harris states that the porters were laughing at Matthews, who was so irate at Harris that another detective had to restrain him as they walked down the hall. *Id.*, p. 44, ll. 23-25, p. 45, l. 1. According to Harris' testimony, Matthews turned to the laughing porters and said something to the effect of "what the hell you all laughing at, he's a snitch anyway, he's already telling." *Id.*, p. 64, ll. 22-25, p. 65, ll. 1-7.

In *Northington,* the court specifically held that labeling an inmate a "snitch" satisfies the *Farmer* standard, and constitutes deliberate indifference to that inmate. 102 F.3d at 1567; *see also Benefield*, 241 F.3d at 1269-70 (holding that an Eighth Amendment claim survived a defense of qualified immunity when a prisoner alleged he had been labeled a 'snitch' by a correctional officer). Matthews claims that Harris has not demonstrated any issues of fact because Harris' only evidence that Matthews labeled Harris a "snitch" in the presence of other inmates is Harris' sworn complaint and his own deposition testimony. The Court disagrees. The Court may consider Harris' sworn Amended Complaint and deposition testimony as evidence supporting his response to the motion. *See Mosier v. Maynard*, 937 F.2d 1521, 1524 (10th Cir. 1991) (a plaintiff's complaint may be treated as an affidavit if it is based on personal knowledge and has been sworn under penalty of perjury).

While the Court may not consider self-serving and conclusory affidavits (*see Hall*, 935 F.2d 1106 at 1111), the Court finds that Harris' testimony consists of alleged statements of fact derived from personal knowledge (*Bryant*, 432 F.3d at 1122) and not conclusory statements such as that rejected in *Murray v. City of Sapulpa*, 45 F.3d 1417 1422 (10th Cir. 1995) (excluding three affidavits asserting "general knowledge" of a "common practice" as conclusory).  Harris' testimony that Matthews labeled him a "snitch" in the presence of other inmates at the jail and Matthews' presumed denial[8] of the same simply raise an issue of material fact that should, under the right circumstances, be heard by a jury.

B.    Causation

Matthews contends that Harris has failed to raise a genuine issue of fact demonstrating that, but for Matthews' "snitch" disclosure, Harris would not suffer from emotional distress.  Motion at 11, docket #94.   According to Matthews, "[t]here are a number of other likely scenarios under which the inmates could have discovered that Plaintiff was an informant, of which Plaintiff was well aware, that could have caused his alleged emotional distress."  *Id.*

Causation is a necessary element of a § 1983 claim of deliberate indifference.  *Sparks v. Rittenhouse*, 164 F. App'x 712, 718 (10th Cir. 2006) (citing *Daniels v. Gilbreath*, 668 F.2d 477, 488-89 (10th Cir. 1982)).

Citing a Pennsylvania district court opinion, Harris argues that Matthews' disclosure proximately caused his emotional distress through an "indirect consequences" theory - that is, Matthews "set[ ] in motion a series of acts by others which the actor [knew] or reasonably [should have known] would cause others to inflict the constitutional injury."  Response at 14 (citing *McCleester v. Mackel*, No. 06-120J, 2008 WL 821531, at *12 (W.D. Pa. Mar. 27, 2008)).  As it turns

_____

[8]Notably, Matthews provides no affidavit of his own supporting his implication that he did not make the "snitch" statement.  *See Celotex Corp.,* 477 U.S. at 323.

out, this theory is recognized in the Tenth Circuit as well.  With respect to causation, the Tenth Circuit has found that "[c]oncerning a defendant acting in a non-supervisory capacity, there must be cause in fact between the conduct complained of and the constitutional deprivation." *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990).  At the same time, direct participation is not necessary: "[t]he requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Id.* (quoting *Connor v. Reinhard*, 847 F.2d 384, 397-97 (7th Cir. 1988), *cert. denied*, 488 U.S. 856 (1988)).

Here, Harris offers no evidence, other than a conclusory statement in his unsworn response brief, that he suffered emotional distress resulting directly from Matthews' disclosure.  That is, Harris argues in his response brief that he "was placed on medication the following month after the Defendant's release of this information, nearly a year before the assault occurred." Response at 15. Further, Harris identifies the medication as "Remeron" and states that it has been "increased on several occasions."  *Id.* at 17.  However, Harris provides no affidavit nor any sworn testimony supporting the argument that he was placed on medication one month following Harris' statement in November 2008.

Rather, Harris' evidence demonstrates that he suffered an emotional injury *after* the August 2009 assault.  For example, Harris provides an unchallenged document titled, "Clinical Record - Therapeutic Documentation Car Plan (Medications) - Dec-10," which reflects "order dates" of "12-6-09" and "12-10-09," a list of several medications and their dosages, and the "date(s) dispensed" which are initialed from 12/19 through 12/27.  *See* docket #99 at 32.  Although not entirely clear, the document appears to reflect the dispensing of medication to Harris in December 2010, not only by the title, but also by a handwritten note at the bottom of the page, "Copy of MAR 12.27.10 -

1110." *Id.*  The "order date" reflected next to "Remeron 45 mg" is "12-6-09."  *Id.*

Moreover, Harris' deposition testimony reflects that Harris was prescribed the medication *after* the August 2009 physical assault:

> Q: -- did you get that prescription after the assault -- right after the assault when you went to medical for the physical injuries, or was it sometime later?
>
> A: It was -- they didn't give -- the physical injuries are for one medication. You had to see a psychiatric person to get the other medication.
>
> Q: Okay. And when did you see the psychiatric person?
>
> A: Sometime immediately after that. It wasn't -- maybe a week or two, no more than a month.
>
> Q: Did you ask for that? Or how did that come about?
>
> A: After she interviewed me, she told me she was going to prescribe some kind of medication for the symptoms that I was having, the problems that I was having.

Harris Depo., p. 116, ll. 16-25, p. 117, ll. 1-9, docket #99 at 30.   Additionally, Harris' sworn Amended Complaint is not inconsistent; he alleges that he was "assaulted ... on August 24th I was kicked down a flight of stairs. I've been placed on medication to deal with the unrelenting fear that I suffer every day."  Docket #7 at 6.

It is clear from the evidence presented that Harris suffered the claimed emotional injury following not only the August 2009 assault, but also following a conversation Harris had with gang members a couple of days before the assault regarding his witness status, and following Harris learning of a "hit" against him in March or April 2009.  The above-cited evidence, coupled with Harris' testimony that there were no threats by any other jail inmates from November 19, 2008 to March or April 2009, and no assaults until August 2009, lead the Court to conclude that no reasonable juror could find that Harris suffered emotional injury as a direct result of Matthews' "snitch" disclosure in November 2008.  Therefore, for Harris to overcome summary judgment on

13

the causation question, he must demonstrate a genuine issue of material fact as to whether Matthews set in motion the series of events described herein that he knew or reasonably should have known would cause others to deprive Harris of his constitutional rights. *See Snell*, 902 F.2d at 700.

For the same reason articulated by the Tenth Circuit previously in this case (*see Harris*, 2011 WL 1108799, at *3), this Court concludes that Harris has failed to raise any genuine issues of fact demonstrating that Matthews' disclosure was the event that launched the threat of a "hit," the conversation with gang members, the kick down the stairs and the subsequent emotional injury, as opposed to the fact that Ray and Owens both knew that Harris testified against them in their criminal trials. Harris Depo., p. 127, ll. 12-25, docket #37-1 at 19. "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Absent admissible evidence to the contrary, Harris fails to demonstrate a genuine issue of material fact concerning whether Matthews caused his constitutional injury. *See Sparks*, 164 F. App'x at 718 ("[c]ausation is a necessary element of a § 1983 claim of deliberate indifference"). Therefore, the Court respectfully recommends that the District Court grant Matthews' motion for summary judgment.

Because the Court has determined that summary judgment is proper as to Matthews' liability for the Section 1983 claim, the Court need not address Matthews' arguments concerning whether Harris is entitled to compensatory and/or punitive damages for the claim. However, the Court notes its agreement with Matthews that Harris would not be entitled to be compensated for his emotional injury pursuant to 42 U.S.C. § 1997e(e).

In addition, the Court agrees there is no evidence raising an issue of fact that Matthews, with evil motive or intent or with callous indifference to Harris' constitutional rights, disclosed Harris'

witness status.  Punitive damages are available in a 42 U.S.C. § 1983 action when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983); *see also Soderbeck v. Burnett County,* 752 F.2d 285, 291 (7th Cir. 1985) (stating that "punitive damages ... are reserved for cases where the wrongfulness of the defendant's conduct is conspicuous, implying that its wrongfulness is apparent to the person who engages in it, and not just to a lawyer").  According to Harris, Matthews angrily stated in the presence of other unknown inmates "what the hell you all laughing at, he's a snitch anyway, he's already telling."  Harris Depo., p. 64, ll. 22-25, p. 65, ll. 1-7.  There is no evidence nor any allegations that Matthews specifically told certain inmates about the label, or ordered or recruited inmates to harm Harris "in an attempt to have [Harris] seriously injured or killed."  *See, e.g., Benefield*, 241 F.3d at 1270 (allegations that defendant circulated rumors that plaintiff was a "snitch" and showed other inmates a letter he wrote indicating that he was giving information to the prison staff); *Northington*, 102 F.3d at 1567-68 (defendant spread rumors that plaintiff was a snitch to certain inmates "to protect those inmates from being labeled snitches by association"); *Brown*, 265 F. App'x at 735 (allegations that prison guard specifically told plaintiff's cellmate he "would not want to be housed" with plaintiff and later explained to cellmate that plaintiff was child molester).

## IV.   Conclusion

Harris has failed to raise a genuine issue of material fact as to whether Matthews caused Harris' emotional injury and, thus, summary judgment is proper as to liability for Harris' claim for mental and emotional damages pursuant to the Fourteenth Amendment.  Accordingly, this Court respectfully recommends that the District Court **grant** Matthews' Motion for Summary Judgment [filed May 27, 2011; docket #**94**] and dismiss Harris' remaining Fourteenth Amendment claim.

Respectfully entered and dated at Denver, Colorado, this 25th day of July, 2011.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge